STAPLETON, Circuit Judge,
dissenting:
I would reverse the judgment of the District Court and remand the case for further proceedings. While the District Court’s August 15th opinion can be read as an exercise of discretion, it does not adequately explain its decision to deny common' fund fees in this case. The "only reason the District Court offered for its decision to deny such fees was that “the Court remains concerned with awarding reasonable fees in light of the fee-shifting statute.” -August 15 slip op. at 4-5. In *248 my view, that single sentence, which is essentially a reason for never awarding common fund fees in an ERISA case that goes to judgment, does not sufficiently explain why in this case such fees are inappropriate. Without such an explanation, we are effectively unable to review the District Court’s decision.
Although today’s decision leaves open the possibility that common fund fee awards could be made in future ERISA cases that proceed to judgment, such fees will only be available in cases where either the defendant is unable to pay the statutory fee or plaintiffs’ counsel can successfully show “that competent counsel could not have been obtained for that casé or that line of cases.” Slip op. at 15. On the other hand, my colleagues freely concede, as they must, that common fund fee awards are routinely given in settled cases in which a statutory-fee provision would have applied had the case gone to judgment. They further concede that “there remains a possibility that in some cases counsel for a class of plaintiffs may receive a higher fee award upon settlement than they would have received had the case proceeded to judgment.” Slip op. at 14. I find that unacceptable. While my colleagues are content to have one set of principles apply to settlements and another to judgments, I would follow the course this Court charted in In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768 (3d Cir.1995) (hereinafter “General Motors”), and apply the same legal principles to both those cases that go to judgment and those that settle.
In General Motors, we reviewed a counsel-fee award in the context of a settled case. The relevant analysis, however, is equally applicable to fee awards following a judgment. We recognized that each of the two principal methods of awarding fees — percentage of recovery (“POR”) and lodestar — “has distinct advantages for certain kinds of actions, which will make one of the methods more appropriate as a primary basis for determining the fee.” 55 F.3d at 820. It is, therefore, important for “a court making or approving a fee award [to] determine what sort of action the court is adjudicating and then primarily rely on the corresponding method of awarding fees....” Id. at 821. The Court in General Motors recognized that there are essentially two types of cases— “statutory fee cases” and “common fund cases.” The lodestar method is generally more appropriate for the former, while the POR method is more appropriate for the latter. In “hybrid” cases which share the attributes of both a statutory fee case and a common fund case, it is within the district court’s discretion to make a particularized determination as to whether the case “more closely resembles” a common fund case or a statutory fee case. General Motors, 55 F.3d at 822; see also McLendon v. The Continental Group Inc., 872 F.Supp. 142, 151 (D.N.J.1994) (recognizing the discretionary nature of the decision). I believe that the District Court should be required to make such a determination in this case.
I am concerned about the practical implications of the Court’s opinion. Now that risk multipliers can no longer be used in calculating fees by the lodestar method, use of the POR method often results in significantly higher fee awards. See, e.g., In re Computron Software, Inc., 6 F.Supp.2d 313, 323 (D.N.J.1998) (holding that fee award of approximately 2.5 times the lodestar amount was fair); Local 56, United Food and Commercial Workers Union v. Campbell Soup Co., 954 F.Supp. 1000, 1005 n. 7 (D.N.J.1997) (“[although the court recognizes that $3,239,373 is more than two times the lodestar, the court nevertheless finds such an award fair and reasonable under the circumstances”); J/H Real Estate Inc. v. Abramson, 951 F.Supp. 63, 65 (E.D.Pa.1996) (finding that fee award more than 2.5 times the lodestar is “generous but fair premium”); In re Residential Doors Antitrust Litigation, No. 94-3744, Civ. A. 96-2125, MDL 1039, *249 1998 WL 151804, at *11 (E.D.Pa. Apr.2, 1998) (finding that a fee 1.7 times the lodestar amount was a reasonable fee). Under today’s ruling, there will be a significant number of cases in which plaintiffs’ counsel will be in a position to secure a POR award if there is a settlement, but will be limited to a substantially smaller, lodestar award if the case goes to trial; This creates a compelling, incentive for the plaintiffs’ counsel to settle, thus adding to the already significant conflict of interest between plaintiff class members apd their counsel. See generally John C. Coffee, Jr., Understanding the Plaintiff’s Attorney: The Implications of Economic Theory for Private Enforcement of Law through Class and Derivative Actions, 86 Colum. L. Rev. 669 (1986). For this reason, the method of awarding attorneys’ fees should not turn on the manner in which the case is resolved.
If the District Court had determined that this case more closely resembled a common fund case[1] and had granted the fee- award here sought, its decision would not, in my judgment, conflict-in any way with ERISA’s fee-shifting provision. The defendant would wind up paying no' more and no less than it would pay if the award had been made under the fee-shifting statute, 29 U.S.C. § 1132(g)(1). And the plaintiffs’ counsel would not receive any duplicative recovery; the amount received from the defendant would be deducted from the common fund award.
This leaves the union’s argument that § 1132(g)(1) reflects a general Congressional intent that, a lodestar-calculated fee from the opposing party would be the exclusive method for court-ordered compensation of counsel in ERISA cases. I fail to perceive any evidence of such an intention, much less sufficient evidence to overcome the prescription against construing legislation to abrogate the courts’ traditional, inherent authority.
The Supreme Court has expressly held that it is within the “inherent power in the courts to allow attorneys’ fees in particular situations, unless forbidden by Congress .... ” Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 259, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (emphasis added). It has similarly held that there is a strong presumption against the abrogation of courts’ traditional equity powers. See Chambers v. NASCO, Inc., 501 U.S. 32, 47, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (while the inherent powers of the lower federal courts may be limited by statute, as they were created by an act of Congress, “we do not lightly assume that Congress has intended to depart from established principles such as the scope of a court’s inherent power”) (internal quotation omitted); see also County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1327 (2d Cir.1990) (“fee-shifting statutes are generally not intended to circumscribe the operation of the equitable fund doctrine”).
Nothing in ERISA forbids courts from awarding common fund fees in appropriate cases. Quite the contrary, to the extent any general Congressional intent with respect to fee awards can be gleaned from ERISA, it is to preserve the courts’ traditional equity powers. The statute specifically authorizes courts to grant “appropriate equitable relief,” Id. § 1132(a)(3), and its savings clause provides that it shall not “be construed to alter, amend, modify, invalidate or supersede any law of the United States.” 29 U.S.C. § 1144(d).
In conclusion, if the District Court had made a particularized determination that this case more closely resembled a common fund case than a statutory fee case, it would have had the power to award com *250 mon fund fees, notwithstanding ERISA’s fee-shifting provision. Because the District Court made no such determination, however, I believe the case must be remanded for further proceedings. I respectfully dissent.

. This is not a case in which a class of plan participants seeks to recover the benefits to which they are individually entitled. Rather, it is a suit seeking to compel the restoration of trust funds wrongfully diverted. The recovery is to be paid to the trust for the benefit of all participants.' This suit, therefore, has much in common with the breach of fiduciary duty cases in which the common fund doctrine has traditionally been applied. .